SHIPMAN *v.* BEEBER *et al.*

(*Circuit Court, N. D. New York.* December 3, 1889.)

INFRINGEMENT OF PATENTS—PRIOR STATE OF THE ART—BUTTONS

Letters patent No. 357,237, February 8, 1887, to M. G. Shipman, was for an invention consisting of a fastening device for garments, leather, etc. The button member consisted of a stud, having a head, neck, and outwardly spreading base, and of a central stem, which may be integral with the stud, or a separate part. The stem was adapted to pass through the stud, and through the fabric on which the base of the stud rested, and to be clinched on the opposite side of the fabric, with or without a washer, thus fastening the button member of the combination firmly to the fabric. None of the drawings show a detached stem, but it is in all cases integral with the stud. An earlier patent to one Platt consisted in a tubular stud, with a flange at right angles to the base, and of an inner tubular member, having a flange, and called an "eyelet." The parts were united by placing the outer tube on one side of the fabric, with its flange resting thereon, and inserting the inner tube through the fabric into the outer tube, and compressing the parts together. Defendants used a contrivance similar to the Platt patent, except that the stem differed from the eyelet of the Platt patent slightly in form, and in proportion of its diameter to that of the stud. *Held* that, in view of the prior state of the art, defendants did not infringe the Shipman patent.

In Equity.
*Witter & Kenyon,* for complainant.
*John R. Bennett,* for defendants.

WALLACE J. The complainant alleges that the defendants infringe claims 4, 5, and 6 of letters patent No. 357,237, dated February 8, 1887, granted to Madison G. Shipman. The invention which is the subject of the patent relates to separable buttons, a fastening device composed of two organized members, respectively attached to the two parts of the article to be fastened together. One member represents the button-hole of the glove or garment to be fastened, and the other the button proper. In such a device it is necessary that each of the two members will admit of being fastened securely to the fabric of the glove, shoe, or garment, and will so co-operate with the other that the article can be readily buttoned and unbuttoned, and will be effectually held when buttoned. In view of the prior state of the art, the essential novelty of the inventions in controversy consists in a new organization of two of the parts of the

button member, which may be conveniently described as the "stud" and the "stem." Each of the three claims is for a combination. The button-hole member, which is an element of all the claims in controversy, consists of a hollow cap, provided with a hollow tube to receive the stud of the button member, and a spring inclosed within the cap, and entering the tube, which expands when the head of the stud enters or is withdrawn from the tube, and contracts inwardly upon the neck of the stud to lock it in place. The button member, which is also an element of all the claims, consists (1) of a stud, (termed in the specification a "bulb,") having a head, a neck, and an outwardly speading base; and (2) of a central stem, which may be integral with the stud, or may be máde as a separate part. By the express terms of the claims, the central stem must be "adapted to pass through the material from one side, and be clinched upon the side opposite to that from which it passed through, substantially as described." The drawings show a stem integral with the stud, or, when not integral, located within the stud, which has an end projecting below the base of the stud, capable of passing through the fabric upon which the button member is to be fastened, and of being clinched or upset against the fabric. The specification states that the lower end of the stem is clinched over the edge of the orifice in a washer, but that the washer may be dispensed with, and then the lower end of the stem is clinched "directly upon the fabric." Both the specification and the drawings denote that the stem is to be clinched against the fabric (or the washer) after the stem has been inserted in the stud, and on the side of the fabric opposite the stud. Of course, when it is made integral with the stud, it cannot be clinched in any other place. This is the method by which the fabric is firmly held between the clinched end of the stem and the base of the stud, and the stem and the stud are united with each other. Both the stud and the stem, or either one of them, may be made hollow or solid. The fourth claim is for a combination of the elements thus described. The fifth and sixth claims are for a narrower combination; the fifth being limited to a combination of the parts in which the stud is hollow, and the sixth to one in which both the stud and stem are hollow.

It is obvious that, unless the defendants infringe the fourth claim, they do not infringe any of the claims in controversy. Their separable button contains the button-hole member of that claim, in essentials, though not specifically. Their button member is adapted to be used with a button-hole member which differs in details of construction from that described in the specification; but it can be used, though perhaps not as efficiently, with the button-hole member of the claim. It has a stud, which has a head, neck, and an outwardly spreading base. It has also a tubular or hollow stem. The stem is surrounded by a flange at one end. The stud and stem are not integral, but are separate. They are united together by passing the stem through the fabric, and thence into the stud, until the flange of the stem holds the fabric against the base of the stud, when the parts are clinched together by compression. The stem is not adapted to be clinched against the fabric (or

a washer) on the side opposite the base of the stud, or at the fabric on the side opposite that at which it is inserted. It is adapted to be clinched to the stud at some distance beyond that place; that is, at or near the head of the stud. The difference between its adaptability to be clinched against the fabric and the adaptability of the stem of the patent to be clinched at any other place exhibits the structural differences between the two stems. These differences, slight as they may seem, are material, because they constitute the only differences between the combination of the claim and the combinations which were old in the prior state of the art. The method of uniting the parts of the button member, and holding the fabric between them, in the device of the defendants, more nearly resembles what is shown in the patent to Platt —an earlier patent than the complainant's—than it does that of the patent in suit. In the patent to Platt the stud is tubular, and has a flange formed at right angles to the shank or base. It has also an inner tubular member, which has a flange at right angles to its shank, which is called an "eyelet." This eyelet differs from the stem of the defendants' slightly in form, and otherwise only in the proportion which its diameter bears to the diameter of the stud. The parts are united together by placing the outer tube on one side of the leather, or other fabric, with its flange resting on the fabric, and inserting the inner tube through the fabric into the outer tube, and compressing the two parts together, "thus effectually riveting the eyelet to the stud." It may be that the Platt button member is not as well adapted to be fastened to fabrics differing in thickness as one made like that of the patent; but, if this is true, it is true also of the device of the defendants. On the other hand, it is obvious that both the button member of the Platt patent and that of the defendants dispense with the use of a washer next to the fabric; and, although it is said in the complainant's patent that the washer is only preferably used, it would seem plain that the upsetting of the end of the stem alone would be a crude and undesirable attachment; and that the use of a washer, or a substitute for a washer, like the flanges of the tube of Platt or the stem of the defendants, would be almost indispensable to an artistically finished button fastening.

The contention for the complainant, that the button member of the defendants has the stem of the patent, because that stem can be removed from the stud, and united it again by first passing it through the material, and that it is immaterial whether the two parts are riveted together close to the fabric, cannot be sanctioned. Such a method of uniting the two parts is not suggested by the patent. The drawings nowhere show a stem detached from the stud. In each illustration the parts are assembled together. The theory that they are capable of being detached and reunited in the way suggested is merely conjectural. It is antagonized by the language of the claims, which describes the characteristics of the stem. What is meant by this language is clear, when it is borne in mind that each claim includes a stem which is integral with the stud. Such a stem could only be clinched on the side of the fabric opposite the stud, and could only be passed from the stud through the material.

The case is not one in which the claims in controversy are to be given a more liberal construction than their language fairly requires. The separable button of the patent has never been made commercially, and the only evidence that it can be made commercially is found in the assumption of the expert and counsel for the complainant that the defendants are making it. In view of the prior state of the art as shown in the record, the only novelty of the invention of the claims resides in a new organization of the stem and stud relatively to each other in details of form and proportion, except in instances where the two parts are made integral, unless it resides in assembling the two parts together before they are applied to the fabric. Without passing upon the question of the patentable novelty of the combinations, the bill is dismissed because the defendants do not infringe.